IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

HENRY STUTLER,

      Petitioner,

v.                                       Case No. 2:21-cv-00662

DONALD F. AMES, Superintendent,
Mount Olive Correctional Complex,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 8), Petitioner's letter-form Request for Extension of Time to File § 2254 Petition (which the undersigned construes as a motion for equitable tolling of the statute of limitations (ECF No. 1), and Respondent's Motion to Dismiss § 2254 Petition (ECF No. 10).    This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

### A.    The petitioner's criminal conviction and direct appeal.

In November of 2010, a Clay County grand jury returned a four-count felony indictment charging Petitioner with two counts of first-degree sexual assault and two counts of sexual abuse by a parent, guardian, custodian, or person in position of trust. *State v. Henry S.*, No. 12-0796, 2013 WL 3184854, at *1 (W. Va. June 24, 2013) ("*Henry S. I*"). The charges stemmed from two forensic interviews in which K.W., a then five year-

old female, detailed numerous incidents in which Petitioner sexually assaulted her.   *Id.*
In the first interview, K.W. contended that Petitioner "rubbed her vagina and had her
perform oral sex," on him and that it "tasted nasty."   *Id.*   In the second interview, K.W.
explained that Petitioner "touched her 'a lot' and put his penis in her mouth."   *Id.*

Following these interviews, Petitioner waived his Miranda rights and agreed to
participate in a polygraph examination.   *Id.*   During the polygraph questioning,
Petitioner acknowledged that K.W. had touched his penis, but claimed that she had
hidden under an "open dresser," came out, and grabbed his penis.   *Id.*   Petitioner also
claimed that he was not wearing underwear at the time because he and his wife had sexual
intercourse earlier that morning, which, he claimed, could explain why K.W. indicated
that it "tasted nasty" when Petitioner's penis was in her mouth.   *Id.*   At the same time,
however, Petitioner vacillated about whether K.W. had actually placed his penis in her
mouth, "unless she done it at the same time or something."   *Id.*

Petitioner unsuccessfully attempted to have his polygraph statements suppressed
from his criminal trial.   *Id.*   The circuit court ruled that the statements were admissible
because they were voluntarily made after Petitioner had waived his Miranda rights.
However, the court barred both parties from informing the jury that the statements were
made during a polygraph examination.   *Id.*

Petitioner ultimately accepted a plea offer whereby, on March 29, 2011, he plead
"no contest" to one count of first-degree sexual assault, in exchange for the dismissal of
the remaining three counts in the indictment.   *Id.*   After conducting a plea colloquy
pursuant to Rule 11 of the West Virginia Rules of Criminal Procedure, the circuit court
accepted Petitioner's plea.   *Id.* at *1-2.   The court then informed Petitioner that he was

"statutorily-mandated to participate in a post-plea[ ] sexual offender's evaluation."  *Id.* The circuit court further explained that, if Petitioner refused to accept responsibility or admit guilt during the evaluation, the court was unlikely to grant any request for alternative sentencing, which Petitioner fully acknowledged.  *Id.*

Petitioner subsequently filed a motion to withdraw his no contest plea based on alleged "new evidence" that K.W. recanted her prior allegations against him.  *Id.* at *2. On August 26, 2011, the court conducted an evidentiary hearing in which K.W.'s mother, whose parental rights had previously been terminated, testified about the alleged recantation.  *Id.*  She stated that K.W. informed her that Petitioner never assaulted her, and that she had shared that information with a "contract worker for the DHHR," who may have memorialized the disclosure.  *Id.*  Meanwhile, two DHHR workers and K.W.'s foster mother all testified that K.W. had never recanted her allegations against Petitioner. *Id.*  Prior to ruling on Petitioner's motion to withdraw his plea, and prior to allowing Petitioner access thereto, the circuit court reviewed K.W.'s abuse and neglect case file to determine whether there was any substantiating information of her recantation.  *Id.* The court ultimately denied Petitioner's motion to withdraw his plea on April 26, 2012, finding that the abuse and neglect records contained nothing to support Petitioner's claim that K.W. had ever recanted her allegations.  *Id.*

Petitioner's sentencing hearing was conducted on May 21, 2012 and a final judgment order was entered on May 31, 2012.   At sentencing, the circuit court found that Petitioner had not accepted responsibility for his crime, that he had a "significant criminal history," including "sexual assault charges relating to child victims," and that he was "likely to reoffend."  *Id.*   Noting the gravity of Petitioner's crimes and that an alternative

3

sentence would serve to depreciate the seriousness of his actions, the circuit court imposed the statutorily prescribed sentence of 25-100 years in prison.   *Id.*

During his circuit court proceedings, Petitioner was represented by attorney Wayne King.   Following his sentencing, Petitioner, by new counsel, David M. Dawson, filed a direct appeal in the Supreme Court of Appeals of West Virginia ("SCAWV") in which he raised the following assignments of error:

1. The circuit court abused its discretion when it refused to allow Petitioner to withdraw his plea pursuant to Rule 32(e) of the West Virginia Rules of Criminal Procedure;

2. The circuit court erred when it ruled that Petitioner's statements made during a polygraph examination were admissible when the examiner's notes had been destroyed;

3. The circuit court erred when it refused to allow Petitioner to review K.W.'s abuse and neglect records until after the circuit court's review; and

4. The circuit court erred in accepting Petitioner's no contest plea without first informing him that his failure to admit guilt during his post-plea sexual offender evaluation would likely preclude him from obtaining an alternative sentence

*Henry S. I, supra,* at *3-5.   (*See also* ECF No. 17, Ex. 2 at 4).[1]

On June 24, 2013, the SCAWV issued a memorandum decision affirming Petitioner's conviction and sentence.   *Id.*   Petitioner did not file a petition for writ of certiorari to the Supreme Court of the United States, so his judgment became final on or about September 24, 2013.

---

[1] When citing to documents docketed in this Court's record, the undersigned will use the document number and pagination found at the top of each page of the documents as docketed in the Court's Electronic Case Filing ("ECF") system and will cite the same as "ECF No. ____, Ex. ____ at ____").   Thus, the cited pagination may not match the original pagination contained in the document itself.

**B.    Circuit Court habeas corpus petition (Case No. 14-P-5) and appeal therefrom (Case No. 19-1137).**

On July 29, 2014, Petitioner filed a petition for post-conviction habeas corpus relief in the Clay County Circuit Court, which apparently raised various claims of ineffective assistance of trial counsel.  (ECF No. 17, Ex. 5 at 9 and Ex. 10).  Petitioner's habeas proceedings remained pending for nearly five years, largely due to changes in his court-appointed counsel and amendments to the petition.  (ECF No. 17, Ex. 10).  On November 8, 2017, while Petitioner was represented by attorney Herb Hively, the circuit court conducted an omnibus evidentiary hearing, during which Petitioner and Mr. King testified about the investigation of the case and Mr. King's conduct and their communications during the plea and sentencing phases thereof.  (ECF No. 17, Ex. 5 at 3-7).

On April 16, 2019, Petitioner, by Mr. Hively, filed a second amended petition, which raised a claim of ineffective assistance of trial counsel due to Mr. King's alleged failure to "inform him of the element[s] of the offense of sexual assault in the first degree so that he could enter a knowingly [sic], intelligent and voluntary guilty plea."  (ECF No. 17, Ex. 4 at 4-6).  The second amended petition also asserted that the trial court failed to properly conduct his guilty plea hearing under Rule 11 of the West Virginia Rules of Civil Procedure.  (*Id.* at 4, 6-8).

By Order entered November 15, 2019, the circuit court denied Petitioner's habeas corpus petition, finding that Petitioner had failed to overcome the presumption that trial counsel's performance was objectively reasonable and otherwise failed to demonstrate sufficient prejudice therefrom.  (ECF No. 17, Ex. 5 at 9-14).  The circuit court further

found that the trial court substantially complied with the requirements of Rule 11 of the West Virginia Rules of Criminal Procedure concerning his guilty plea hearing, as demonstrated by the hearing transcript, and further specifically found that Petitioner's claims of trial court error surrounding his guilty plea, and the attempted withdrawal thereof, were matters of state law that were not constitutional in nature and, thus, were not subject to habeas corpus review. (*Id.* at 14-18).

On December 16, 2019, Petitioner appealed the circuit court's denial of his habeas corpus petition to the SCAWV, again asserting ineffective assistance of trial counsel and trial court error concerning the plea hearing. *Stutler v. Ames*, No. 19-1137. (ECF No. 17, Ex. 6 at 6). Petitioner's appellate brief specified the following grounds for relief concerning the alleged conduct of his trial counsel, Mr. King, which had been addressed in the circuit court's proceedings:

A.    Failure to properly communicate with Petitioner prior to guilty plea.
B.    Failure to furnish Petitioner with all discovery.
C.    Failure to properly and fully investigate the evidence.
D.    Failure to fully explain the plea offer and potential sentence.
E.    Plea agreement was coerced.
F.    Failure to file a motion to reconsider sentence.

(ECF No. 17, Ex. 7).

On August 27, 2021, the SCAWV issued a memorandum opinion affirming the circuit court's order denying Petitioner's habeas corpus petition. *See Henry S. v. Ames*, No. 19-1137, 2021 WL 3833738 (W. Va., Aug. 27, 2021) ("*Henry S. II*"). The mandate issued on September 28, 2021. (ECF No. 17. Ex. 8).

6

### C.    Instant section 2254 petition and motion to dismiss.

On December 20, 2021, this Court's Clerk's Office received and docketed, as a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, what appears to be a letter-form motion for extension of time to file a section 2254 petition, which set forth no proposed grounds for relief.  (ECF No. 1).  Petitioner's motion generally claimed that the prison in which he was housed had been on "lockdown" due to the COVID-19 pandemic since December 6, 2021, and claimed that his access to the law library had been restricted as a result.  (*Id.*)  Petitioner's motion did not elaborate as to the extent of the limits imposed regarding his access to the law library, nor did he claim that he did not have access to his court files or legal papers from his underlying state court proceedings. (*Id.*)

On May 18, 2022, before this court took any action on the motion for extension of time, Petitioner filed a section 2254 petition, using this court's approved form, which raised the following grounds for relief:

1.    Ineffective assistance of counsel

    (a)    Failed to inform Petitioner of his constitutional rights;

    (b)    Failed to properly investigate;

    (c)    Failed to disclose discovery, plea offers, or seek grand jury transcript;

    (d)    Promised Petitioner one year of probation in exchange for his Kennedy plea;

    (e)    Did not sufficiently meet with Petitioner to answer questions prior to guilty plea phase;

    (f)    Having stand-in counsel at plea hearing over Petitioner's objection;

      (g)   Failed to advise Petitioner of 25 to 100-year sentence exposure;

2.     The trial court's failure to comply with Rule 11 of the West Virginia Rules of Criminal Procedure in accepting Petitioner's no contest plea;

3.     The trial court erred when it refused to permit Petitioner to withdraw his no contest plea;

4.     The trial court erred when it refused to allow Petitioner to review K.W.'s abuse and neglect records until after the court conducted an *in camera* review and ruled on the Petitioner's motion to withdraw his plea;

5.     The trial court erred in allowing the State to admit statements made by Petitioner during a polygraph examination; and

6.     The trial court erred in accepting Petitioner's no contest plea without first informing Petitioner of his need to admit guilt during his post-plea sex offender evaluation should he desire alternative sentencing.

(ECF No. 8 at 5-11).

On May 10, 2023, the undersigned entered an Order and Notice (ECF No. 10) suggesting that the statute of limitations under 28 U.S.C. § 2244(d)(1)(A) may have already expired when Petitioner filed his § 2254 petition, and that the court has no general authority to grant an extension thereof. Nonetheless, the undersigned further found that, even if the petition was untimely filed, Petitioner's grounds for an extension of time to file his petition could implicate the doctrine of equitable tolling and the best course of action was to order Respondent to respond to the petition to address those issues. Thus, the undersigned ordered Respondent to file a response to the petition addressing the timeliness thereof, including whether there is an appropriate basis for equitable tolling, as well as whether Petitioner's claims are cognizable in federal habeas corpus, and whether his state court remedies had been properly exhausted. (*Id.* at 2-3).

On August 24, 2023, Respondent filed the instant Motion to Dismiss (ECF No. 17), asserting that Petitioner's § 2254 petition is untimely and there is no valid basis to equitably toll the statute of limitations concerning any of his claims for relief.    On October 12, 2023, Petitioner responded to the motion to dismiss.    (ECF No. 19). Respondent did not file a reply brief.    These matters are now ripe for resolution.

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ["AEDPA"], effective April 24, 1996, provides federal habeas relief to state prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States."    28 U.S.C. § 2254(a).    28 U.S.C. § 2244(d)(1) prescribes a one-year period of limitation governing the filing of § 2254 habeas petitions that runs from the latest of one of four specified events:    (A) the date on which the judgment became final, by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.    28 U.S.C. § 2244(d)(1); *see also* *Jimenez v. Quarterman*, 555 U.S. 113, 114 (2009).[2]

---

2   In the present proceedings, Petitioner has not alleged circumstances that would implicate subsections (B), (C), or (D).    Thus, the undersigned will only address the application of subsection (A) herein.

For the reasons addressed below, Petitioner's petition was not timely filed.[3] Moreover, to the extent that Petitioner claims that the untimely filing of his petition is excused by equitable tolling principles, those arguments are without merit, and, thus, the petition should be dismissed as being untimely pursuant to 28 U.S.C. § 2244(d)(1).

## A.     Date of filing of Petitioner's § 2254 petition.

Although docketed as a § 2254 petition on the docket sheet, Petitioner's initial letter-form motion for extension of time to file a § 2254 petition cannot be construed as a pending § 2254 petition.   Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts requires that a § 2254 petition:   "(1) specify all grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the requested relief; (4) be printed, typewritten, or legibly handwritten; and be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242."   Rule 2, *Rules Governing Section 2254 Cases in the United States District Courts*.   Petitioner's initial motion asserts that his "federal time" (presumably the one-year statute of limitations to file a § 2254 petition) "ends on December 22, 2021."   (ECF No. 1 at 1).   Thus, he sought an extension of that deadline. (*Id.*)

However, beyond summarily stating that the prison was "in Covid lockdown" and that he had "no idea when [he] might be able to return to the law library to continue work on [his] § 2254 writ," Petitioner's motion failed to identify <u>any</u> grounds for habeas corpus relief and failed to otherwise comply with any of the requirements of Rule 2.   Thus, it

---

3   Because the undersigned disagrees with Respondent's calculation of the running of the one-year state of limitations, the court will present its own calculation thereof.

cannot be treated as a properly filed § 2254 petition.   *See Mayle v. Felix,* 545 U.S. 644, 655 (2005) (Rule 2 requires an inmate to plead, with particularity, facts and details concerning "all the grounds for relief from the conviction or sentence that you challenge"); *see also Woodford v. Garceau,* 538 U.S. 202, 207 (2003) (holding that a motion for a stay of execution and motion for appointment of counsel along with a statement of non-frivolous issues were insufficient to serve as a "pending" petition for purposes of the AEDPA); *O'Connor v. United States,* 133 F.3d 548, 550 (7th Cir. 1998) (holding that a petition that is returned as insufficient under Rule 2 of the Rules Governing Section 2255 Cases does not count as an initial petition).   Significantly, considering that Petitioner is limited to bringing claims in his § 2254 petition that were fully exhausted in the state courts, he needed only to restate the claims that he exhausted in the state courts in his § 2254 petition, and he failed to do so in that motion.

Nonetheless, on May 18, 2022, the Clerk received and docketed a § 2254 petition containing Petitioner's grounds for relief on the court's approved form petition, which appears to satisfy the requirements of Rule 2.   (ECF No. 8).   Consequently, the undersigned proposes that the presiding District Judge construe the petition contained in ECF No. 8 to be Petitioner's § 2254 petition with a filing date of May 16, 2022.[4]

### B.     The petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

The first critical date used to determine the timeliness of Petitioner's petition is the date his judgment became final, by the conclusion of direct review, or the expiration of

---

4  Although the petition was received and docketed by the Clerk on May 18, 2022, applying the "prison mailbox rule" established in *Houston v. Lack*, 487 U.S. 266 276 (1988), the court considers the document to be filed as of May 16, 2022, the date that it was executed by Petitioner and placed in the mail by prison authorities.

the time for seeking such review.   28 U.S.C. § 2244(d)(1)(A).   "A judgment becomes final: (1) when the opportunity to appeal the [trial] court's judgment expires; (2) when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction; or (3) when the Supreme Court of the United States denies certiorari."   *Riley v. Vest*, No. 5:17-cv-02367, 2018 WL 616160, at *3 (S.D. W. Va. Jan. 5, 2018), *report and recommendation adopted,* 2018 WL 606208 (S.D. W. Va. Jan. 29, 2018) (internal quotations and citations omitted).   Here, the SCAWV affirmed Petitioner's convictions on June 24, 2013.   *Henry S. I*, 2013 WL 3184854, at *5.   Petitioner did not seek certiorari in the United States Supreme Court.   Thus, his one-year limitation period under subsection (A) commenced on or about September 24, 2013 (90 days after the affirmance of his judgment by the SCAWV on June 24, 2013).   *See Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000).[5]   Therefore, Petitioner would have been required to file a § 2254 petition on or before September 24, 2014, absent a tolling event.

The one-year statute of limitations is, however, subject to certain exceptions and tolling doctrines.   *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (holding that "§ 2244(d) is subject to equitable tolling in appropriate cases").   The statute itself expressly

---

5  Respondent's memorandum of law (which appears to contain several typographical errors concerning dates used in the calculation of the statute of limitations) also incorrectly asserts that the 90-day period for seeking certiorari ran from the date the mandate affirming Petitioner's conviction was issued by the SCAWV on July 24, 2013.   However, the 90-day period for seeking certiorari begins to run from the date of the SCAWV's decision, not the date the mandate is issued.   *See* SUP. CT. R. 13(3) ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance of the mandate (or the equivalent under local practice.")).   Here, the SCAWV's decision concerning Petitioner's direct appeal was issued on June 24, 2013.   Therefore, the 90-day period for seeking a writ of certiorari expired on September 24, 2013, which further affects the correct calculation of the one-year statute of limitations.   Therefore, Respondent's assertion that the limitation period expired on December 26, 2021 is incorrect, and statute of limitations instead expired on or about November 29, 2021, as further explained below.

provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2); *see also Holland*, 560 U.S. at 661 (noting that § 2244(d) "expressly tolls the limitations period during the pendency of a properly filed application for state collateral relief.") (Scalia, J., dissenting, in part).

Petitioner initially filed a state petition for post-conviction habeas corpus relief on July 29, 2014, which tolled the statute of limitations.  At that time, 307 days had run under the one-year statute of limitations.  The statute remained tolled until September 28, 2021, when the SCAWV issued its mandate affirming the denial of Petitioner's state habeas corpus petition.  The statute of limitations began to run again on September 29, 2021, and expired 58 days later, on November 26, 2021.  However, because it appears that November 26, 2021 was a court holiday, the statute of limitations was extended to Monday, November 29, 2021.  Thus, Petitioner's § 2254 petition, filed on May 16, 2022, was untimely filed under § 2244(d)(1)(A).[6]

## C.      There is no basis for equitable tolling of the statute of limitations.

Because Petitioner's § 2254 petition is untimely under § 2244(d)(1)(A), his petition may only be considered if this federal court concludes that "equitable tolling" of the statute of limitations is warranted.  *Holland*, 560 U.S. at 649.  The undersigned has construed Petitioner's letter-form request for extension of time to file a § 2254 petition contained in ECF No. 1 as a motion for equitable tolling of the statute of limitations.

---

6   The undersigned further notes that, even if Petitioner's initial letter-form motion for extension of time could somehow be construed as a proper § 2254 petition, it was also filed after the expiration of the applicable statute of limitations under § 2244(d)(1)(A).

The United States Supreme Court has concluded that a petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (citation omitted).   The diligence required for equitable tolling does not have to be maximum feasible diligence, but it must be reasonable.   *Id.* at 653.   "[I]n every instance reasonable diligence seemingly requires the petitioner to work on his petition with some regularity—as permitted by his circumstances—until he files it in the district court." *Smith v. Davis*, 953 F.3d 582, 601 (9th Cir. 2020); *see also Sholes v. Cates*, No. 1:2-cv-01006-DAD-HBK, 2021 WL 5567381, at *4 (E.D. Cal. Nov. 29, 2021), *report and recommendation adopted,* 2022 WL 4072862 (E.D. Cal. Sept. 2, 2022).

Respondent stresses that Petitioner faces a "substantial burden" in proving "exceptional circumstances" warranting equitable tolling, noting that the Fourth Circuit has emphasized that the equitable tolling exception should be exercised sparingly and that the circumstances warranting the same are narrow and "rare."   (ECF No. 18 at 14).

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.   To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation.   We believe, therefore, that any resort to equity must be reserved for those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *see also Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003); *Welch v. Nelson*, No. 5:21-cv-00767-MGL-KDW, 2022 WL 2068769, *4-5 (D.S.C. Apr. 29, 2022).   An inmate asserting equitable tolling "bears a

strong burden to show specific facts" that demonstrate he fulfills both elements of the test.  *Booker v. Clarke*, No. 3:21-cv-212 (DJN), 2022 WL 464554, at *3 (E.D. Va. Feb. 15, 2022).

Petitioner's initial motion summarily asserts that COVID-19 pandemic related restrictions denied him sufficient access to the prison law library and, thus, prohibited his timely filing of a proper § 2254 petition.  (ECF No. 1).  Respondent's motion to dismiss, however, argues that Petitioner's sole reliance on the Covid-19 protocols and restrictions concerning access to the law library is not a sufficient basis for equitable tolling.  (ECF No. 18 at 15).  Specifically, Respondent's memorandum of law asserts:

> Petitioner must prove that those protocols made it impossible for him to file his petition prior to the expiration of the one-year period of limitations.   If Petitioner's assertions in his December 15, 2021, letter are assumed true, it does not show at all that Petitioner's ability to timely file his Petition was completely thwarted as a result.  Petitioner does not identify what the "restrictions" imposed upon his access to the prison's law library actually entailed; whether he was prevented from having certain materials delivered to his cell; or whether these "restrictions" prevented him from accessing the legal files and papers from his underlying proceedings. Petitioner does not assert that he was denied access to the approved form utilized by most prisoners to file Section 2254 petitions, or provide any other discernible reason why it was impossible for him to timely file his petition due to the prison's policies and procedures implemented to prevent the spread of COVID-19 within the prison population.

(*Id.*)  Respondent further contends that Petitioner summarily asserts that the prison implemented those protocols on December 6, 2021, but does not explain what efforts he had made prior to that time to complete his petition that could no longer be done due to the "restricted access" to the law library.  (*Id.* at 15).  Respondent asserts:

> Indeed, a review of Petitioner's May 18, 2022, Section 2254 petition contains nothing to indicate that access to anything other than Petitioner's prior legal documents was needed in order to complete the form setting forth his grounds for relief.

(*Id.* at 15-16).    Moreover, Respondent contends that Petitioner's filings fail to "demonstrate that he was diligently pursuing his rights throughout the entirety of the one-year limitation period."    (*Id.* at 16-17).

Petitioner's response (titled "Objection and Reply") clarifies, as supported by a staff affidavit, that the COVID-19 lockdowns began as early as August of 2020, and have continued through May of 2023, affecting the daily operations of the prison.    (ECF No. 19 at 1-2 and Ex. 1).    Petitioner further avows that "it was absolutely impossible for him to work on, or have any access to, the law library to file his § 2254 [petition] timely."    (*Id.* at 2).    However, Petitioner's response further acknowledges that "the whole world had been going through the 'Covid pandemic'" and that he and "others alike here at MOCC were dealing with institutional lockdown, and with no access to the law library or any resources[.]"    (*Id.* at 1).

Numerous courts have found that limited access to a law library does not constitute extraordinary circumstances to support equitable tolling.    *See, e.g., Johnson v. Waid*, No. 5:07-cv-139, 2009 WL 514211, at *3 (N.D. W. Va. Mar. 2, 2009) (finding that time limits of one hour per day in the law library and frequent functional failures of the computers did not constitute extraordinary circumstances beyond the petitioner's control to warrant equitable tolling); *Tucer v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008) (finding that "a prisoner's limited access to the prison law library is not grounds for equitable tolling"); *Marsh v. Soares*, 223 F.3d 1217, 1221 (10th Cir. 2000) (finding that a 15-day holiday closure of the law library did not constitute extraordinary circumstances to warrant equitable tolling).

Additionally, various courts that have specifically addressed the issue have determined that, although the COVID-19 pandemic did create unusual circumstances, it did not "automatically warrant equitable tolling for any petitioner who seeks it on that basis." *See Olsen v. United States*, No. 20-cv-166-BLW, 2021 WL 329462, at *3 (D. Idaho Feb. 1, 2021); *see also United States v. Henry*, No. 2:20-cv-01821, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020). To meet the requirements of equitable tolling, Petitioner is required to "allege <u>with specificity</u> the steps he took to diligently pursue his federal claims." *Yang v. Archuleta*, 525 F.3d. 925, 930 (10th Cir. 2008) (emphasis added); *see also Welch v. Nelson*, No. 5:21-cv-767-MGL-KDW, 2022 WL 2068769, at *5 (D.S.C. Apr. 29, 2022), *report and recommendation adopted*, 2022 WL 2067883 (D.S.C. June 8, 2022). Thus, Petitioner's blanket assertion that the COVID-19 pandemic limited or denied his access to the law library, standing alone, fails to establish extraordinary circumstances. *See Booker v. Clarke*, No. 3:21-cv-212 (DJN), 2022 WL 464554, at *3 (E.D. Va. Feb. 15, 2022) (explaining routine aspects of prison life, such as "restricted access to the law library . . . do not qualify as extraordinary circumstances."); *United States v. Harris*, No. 3:15-cr-170 (DJN), 2021 WL 1823109, at *5 (E.D. Va. May 6, 2021) (finding that generic claims about COVID-19 restrictions did not warrant equitable tolling, noting an inmate must explain with specificity how the alleged conditions actually hindered his efforts to pursue his claims within the statute of limitations); *Howard v. United States*, No. 4:20-cv-1632 JAR, 2021 WL 409841, at *2 (E.D. Mo. Feb. 5, 2021) (rejecting assertion that COVID-19 pandemic prevented movant from fully presenting his case because "movant makes no effort to demonstrate that he has been diligently pursuing his rights" and "does not claim to have taken any action to pursue his rights").

17

Most significantly, Petitioner has not demonstrated why he could not timely file a satisfactory form petition setting forth the same grounds for relief that had just been exhausted through his state court habeas corpus proceedings and would not necessarily have required law library access.   To timely file a petition, Petitioner was not compelled to provide extensive legal analysis of his claims.   Rather, he was merely expected to state his grounds for relief (which were required to be federal claims identical to those raised in his state court proceedings) and identify specific facts supporting them, rather than to argue or cite case law.   *See Farley v. Director, TDCJ-CID*, No. 4:21-cv-00676, 2022 WL 2183305, *4 (E.D. Tex. Apr. 20, 2022).

At bottom, Petitioner has offered insufficient facts to establish the rare and exceptional circumstances to justify equitable tolling herein.   He makes general assertions that he was denied access to the law library, but otherwise fails to demonstrate that he acted with due diligence to timely file a sufficient § 2254 petition.   While he describes general difficulties, faced by all prisoners at MOCC, in accessing the prison law library during COVID-19 lockdowns, he fails to provide facts to show that lack of access to the law library "actually prevented" him from timely filing his federal petition.   *See Dragasits v. Covello*, No. 3:21-cv-1459-CAB-MDD, 2022 WL 207730, at *8 (S.D. Cal. Jan. 24, 2022) (citing *Chapman-Sexton v. United States*, No. 2:20-cv-03661; 2:16-cr-00141, 2021 WL 292027 at *3 (S.D. Ohio Jan, 28, 2021); *see also Robinson v. Marshall*, 405 Fed. App'x 241, 242 (9th Cir. 2010) (finding equitable tolling unwarranted where petitioner "did not demonstrate how limited access to the library [due to extended prison lockdowns] was the cause of his failure to timely file his petition"); *United States v. Marshall*, No. 5:21-cv- 00072, 5:18-cr-00122-KKC-MAS, 2021 WL 3854469, *3 (E.D. Ky.

Aug. 5, 2021) (a general lack of access to legal resources, even during COVID-19 pandemic, does not justify equitable tolling).

Moreover, Petitioner has not asserted circumstances unique to him. As noted by various courts addressing this issue, all prisoners were subject to similar restrictions with respect to law library access and other legal assistance during the COVID-19 pandemic. *See, e.g., Rush v. Sec'y, Fla. Dep't of Corr.,* No. 21-10218-C, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) (Petitioner's circumstances were not extraordinary as they were no different than any other prisoner attempting to access legal resources, as they all were subject to COVID-19 protocols); *Sholes v. Cates*, No. 1:21-cv-01006-DAD-HBK, 2021 WL 5567381, at *4 (E.D. Cal. Nov. 29, 2021), *report and recommendation adopted*, 2022 WL 4072862 (E.D. Cal. Sept. 2, 2022) (difficulties and disruptions stemming from prison lockdowns are "conditions of prison life that are no different than those experienced by the vast majority of incarcerated prisoners attempting to file petitions for writ of habeas corpus. By definition, therefore, such circumstances in themselves are not extraordinary and do not justify equitable tolling.").

Thus, Petitioner has not established that such circumstances were "extraordinary" to him. "[T]he mere fact that a restriction relates to Covid-19 does not automatically convert it into an extraordinary circumstance." *Booker*, 2022 WL 464554, at *3 (citing *United States v. Harris*, 2021 WL 1823109, at *4-5 (E.D. Va. May 6, 2021) (finding that generic claims about COVID-19 restrictions did not warrant equitable tolling). While the pandemic-related restrictions certainly made it more challenging to prepare a timely petition, Petitioner has not sufficiently demonstrated extraordinary circumstances that "actually prevented" him from doing so. *See Delarosa v. Dir., TDCJ-CID*, No. 3:21-cv-

19

2414-D-BK, 2022 WL 850041, at **2-3 (N.D. Tex. Feb. 22, 2022), *report and recommendation adopted sub nom. Delarosa v. Dir., TDCJ-CID*, 2022 WL 847216 (N.D. Tex. Mar. 22, 2022) (collecting cases) (the petitioner presented no evidence that diminished library access "actually prevented" him from filing his federal petition; although it may have been more challenging for him to prepare the habeas petition and mail it, he did not establish that any pandemic-related circumstances prevented its filing). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not sufficiently established the necessary criteria to warrant the rare application of equitable tolling of the § 2254 statute of limitations herein and that his § 2254 petition should be dismissed as untimely filed.

### D. Non-cognizable claims.

Considering the proposed recommendation that Petitioner's § 2254 petition should be dismissed as untimely filed, the court need not address whether Petitioner's claims for relief are appropriate for consideration under § 2254 and whether they were properly exhausted in the state courts. Nonetheless, Respondent's motion to dismiss further recognizes that five of the six claims asserted in Petitioner's petition are not cognizable under § 2254. (ECF No. 18 at 2). Specifically, Grounds Two through Six of the petition are raised as trial court errors amounting to violations of state, not federal, law. The admission of evidence is a state law issue that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state-law questions.*"); Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) ("[W]e do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings

20

were so extreme as to result in a denial of a constitutionally fair proceeding.") (internal citation omitted); *Spencer v. Murray,* 5 F.3d 758, 762 (4th Cir. 1993).   Petitioner has not specifically alleged any federal constitutional violations stemming from the state court's rulings.

28 U.S.C. § 2254(d) provides as follows:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The undersigned notes that, while Petitioner's claims of ineffective assistance of counsel set forth in Ground One of the petition are grounded in the federal constitutional standard set forth in *Strickland v. Washington*, 466 U.S, 668 (1984) and, thus, are cognizable claims for relief under § 2254, the remaining claims contained in Grounds Two through Six were not raised as violations of federal constitutional or other federal law.   Rather, they were only raised in both the state and federal court as matters of state evidentiary law or other errors under West Virginia law.   Thus, even if Petitioner's § 2254 petition was somehow deemed timely filed, Grounds Two through Six would not be cognizable claims appropriate for relief under § 2254(d).

## **RECOMMENDATION**

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's § 2254 petition is not timely under 28 U.S.C. § 2244(d)(1) and Petitioner has failed to establish any facts warranting equitable tolling of the statute

of limitations to allow this federal court to consider the claims in his § 2254 petition. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss (ECF No. 17), **DENY** Petitioner's Letter- Form Request for Extension of Time to File § 2254 Petition (which is construed as a motion for equitable tolling of statute of limitations (ECF No. 1), and **DISMISS** Petitioner's § 2254 petition (ECF No. 8) with prejudice.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.    Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.    Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.    *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).    Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to Petitioner, and to transmit a copy to counsel of record.

January 12, 2024

                          Dwane L. Tinsley
                          United States Magistrate Judge